UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRY WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>CLEMENT OGBUEHI, et al.,<br><br>    Defendants. | Case No. 1:19-cv-00855-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM<br><br>(ECF NO. 12)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DIRECTING THE CLERK OF COURT TO ASSIGN A DISTRICT JUDGE |

    Gerry Williams ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on June 19, 2019. (ECF No. 1). The Court screened Plaintiff's complaint, provided the relevant legal standards, and gave Plaintiff leave to amend. (ECF No. 11). Plaintiff filed a First Amended Complaint on November 8, 2019 (ECF No. 12), which is before this Court for screening.

    For the reasons set forth below, the Court recommends that this action be dismissed for failure to state a claim.

    Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

1

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 7), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's First Amended Complaint alleges as follows:

In or about 2010, while housed at Pleasant Valley State Prison ("PVSP"), Plaintiff was

diagnosed with Hepatitis C ("Hep-C"). Hep-C requires interferon treatment.

Plaintiff was transferred to Kern Valley Sate Prison ("KVSP") on April 12, 2012.

On April 4, 2013, Plaintiff requested a medical transfer from KVSP based on the fact that Plaintiff suffers from Hep-C and should be receiving treatment. Plaintiff was evaluated on February 11, 2013 by Doctor A. Manasrah, who documented that Plaintiff was Hep-C positive.

On October 17, Plaintiff submitted a "Health Care Service Request Form" stating that he was experiencing excruciating pain in the upper right side, which he believed may be related to Hep-C causing liver or kidney damage.

Plaintiff was evaluated by RN J. German on December 2, 2013, who recorded that Plaintiff had a history of Hep-C.

For more than three years, Plaintiff complained to Defendant Wayne Ulit that he was having excruciating pain in his upper right side and that he believed his Hep-C was getting worse. Yet, Defendant Wayne Ulit stated that he would not give Plaintiff the treatment because the medication is very expensive and Plaintiff had to be under 55 years old to receive the treatment.

On or about November 29, 2016, Plaintiff was evaluated by Defendant Clement Ogbuehi. Dr. Ogbuehi reviewed Plaintiff's medical history and discovered that Plaintiff was Hep-C positive. Plaintiff explained that he has been experiencing excruciating pain in the upper right side for four or five years and has not received any treatment. Plaintiff explained that there was a new drug that could cure Hep-C. Defendant Ogbuehi denied Plaintiff this new medication and failed to provide Plaintiff any other type of treatment, due to the expensive cost of the drug.

By the time Defendants Ulit and Ogbuehi decided to treat Plaintiff for Hep-C, Plaintiff had contracted cirrhosis of the liver.

On July 3, 2017, Plaintiff filed a medical appeal requesting treatment of Harvoni medication for Hep-C and cirrhosis of the liver. Plaintiff has been asking for treatment for more than five years and has not received any type of treatment.

Plaintiff has had Hep-C for more than 18 years and has not received any type of

treatment. Defendants stated that Plaintiff's Hep-C was undetectable.

Until fairly recently, the standard treatment regimen consisted of high doses of interferon, a virus-fighter produced by white blood cells in combination with another drug, Ribavirin. The drugs were effective in fewer than half the cases and could cause significant side effects such as anemia, hair loss, flu-like symptoms, memory loss, and liver failure. Adding a third drug to the package, Boceprevir, appeared to boost success rates somewhat, but also increased the likelihood of side effects.

Starting in 2013, when Plaintiff requested treatment, the release of a new generation of direct-acting antivirals, known as ADDs, offered new hope for Hep-C patients. The new drugs are tailored to combat specific genotypes of the virus, and are more effective than interferon, resulting in virtual cure in more than 90% of patients.

Plaintiff requested this new drug, Harvoni, which is a cure for Hep-C, prior to contracting cirrhosis of the liver. Defendants Ulit and Ogbuehi refused to provide Plaintiff with medications due to the cost. Now Plaintiff's Hep-C has developed into cirrhosis of the liver.

Plaintiff's liver is heterogeneous echogenicity and exhibits a nodular surface contour consistent with cirrhosis, consisting of dissimilar or diverse ingredients of constituents; mixed. According to the ultrasound of Plaintiff's liver, the image of the transverse and longitudinal static of the upper quadrant of the abdomen are suboptimal due to body habitus. Doctor C. Chult, a liver specialist, recommended dynamic enhanced abdominal CT, which was not ordered by Defendant Ulit or Defendant Ogbuehi.

Plaintiff's liver also exhibits a nodular small mass of round irregular shape lump of a mineral or meneral aggregate, a swelling on the leguminous root that contains symbiotic bacteria, thus, a small abnormal knobby bodily protuberance as a tumorous growth or a calcification near the joint.

Plaintiff informed Defendants Ogbuehi and Ulit on several different occasions that he was experiencing excruciating abdominal pain and dark loud smelling urine, and requested the new oral treatment: Harvoni, Sovald, and Viekra Pak which works better than interferon and

only takes 12 to 24 weeks to cure the hep-C virus and has a 90% to 100% success rate. Plaintiff's request for treatment was denied.

Plaintiff also submitted as exhibits medical records and responses from California Correctional Health Care Services to his appeals. One such letter from California Correctional Health Care Services responds to Plaintiff's request for Harvoni medication and states:

> Subsequent to your initial health car [sic] appeal submittal, the guidelines for treatment of Hepatitis C virus infected patients has been revised. As such your medical condition will continue to be monitored with care provided as determined medically indicated, in accordance with the California Correctional Health Care Services Care Guide: Hepatitis C (December 2017).
>
> The guidelines for treatment of Hepatitis C virus infected patients are outlined in the California Correctional Health Care Guide: Hepatitis C (December 2017) that can be found in your institution's law library.
>
> . . .
>
> After review, no intervention at the Director's Level of Review is necessary as your medical condition has been evaluated and you are receiving treatment deemed medically necessary.

(ECF No. 12, at pgs. 26-27). Another letter from California Correctional Health Care Services explains that Plaintiff was interviewed by J. Sao, Physician and Surgeon on August 28, 2017, and then gives the following response:

> The response stated you were examined by J. Sao, Physician & Surgeon on 08/28/17. This examination is documented on an Outpatient Progress Note dated 08/28/17. This document states you requested medication, Harvoni, for the treatment of liver cirrhosis/Hepatitis C. A review of your Electronic Health Record (EHR) and related documents was completed. Primary Care Provider Notes dated 07/03/17 showed an EGD was conducted on 05/03/17 and showed no varices, a liver ultrasound done on 06/14/17 showed no focal masses, and Primary Care Provider Notes dated 08/16/17 indicated your viral load are undetectable. Therefore, your appeal is denied at the first level as there are no clinical indications to warrant the use of Harvoni, at this time.

(ECF No. 12, at p. 28). In another letter, California Correctional Health Care Services indicated that Plaintiff's health records were also reviewed by M. Spaeth, Chief Physician & Surgeon. It repeats much of what was said above, and adds:

> Inmate Medical Services Policies and Procedures, Volume 4, Chapter 31.2, Hepatitis C Management Procedures, "As outlined in the CCHCS Care Guide: Hepatitis C, determination of eligibility for treatment is based on the patient-

5

>inmate's HCV genotype, extent of disease (stage of fibrosis on biopsy, when indicated), overall health status, custody factors (such as time remaining to serve), and other factors which contribute to success or failure of treatment. Treatment inclusion and exclusion criteria are outlined in the CCHCS Care Guide: Hepatitis C."

(ECF No. 12, at pgs. 30-31).

### III. ANALYSIS OF PLAINTIFF'S CLAIMS

#### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others

which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

### B. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is

7

insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff fails to state a claim for violation of his constitutional rights under these standards. Plaintiff alleged that he has had Hep-C for 18 years, and now has cirrhosis of the liver. Construing the factual allegations in favor of Plaintiff, Plaintiff has sufficiently alleged that he has a serious medical need.

However, based on the legal standards above, Plaintiff does not allege facts showing a deliberate indifference to his medical needs. Plaintiff explains in detail how he believes that he should be receiving a certain type of treatment for Hepatitis C based on new research and developments in medicine. He certainly alleges that he disagrees with the medical treatment, or lack thereof, that was given to him. However, the facts he alleges, combined with the exhibits attached to his complaint, demonstrate that the prison medical professionals disagreed with Plaintiff's preferred treatment plans. His medical history and treatment were reviewed by multiple doctors who confirmed that he did not require the treatments he was requesting. There are no allegations suggesting that either defendant believed that Plaintiff should be receiving the treatments he requested yet failed to provide those treatments.

Even according to Plaintiff's allegations, the treatment for Hep-C can often be ineffective or cause side effects. Although Plaintiff alleges that a certain combination of

8

treatments essentially constitutes a cure, he does not allege that either defendant told him this or believed this. He also does not allege that he failed to receive treatment pursuant to the health care guidelines discussed in his health care appeals.

## IV. CONCLUSION AND RECOMMENDATIONS

The Court has screened the First Amended Complaint and finds that it fails to state any cognizable claims for the reasons described in this order.

The Court does not recommend granting further leave to amend because the Court provided Plaintiff with an opportunity to amend his complaint with the benefit of the legal standards above, and Plaintiff filed his First Amended Complaint with the guidance of those standards. It appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's First Amended Complaint be dismissed for failure to state a claim; and
2. The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

\\\
\\\
\\\

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: **April 3, 2020**

/s/ *Erin P. Grosjean*
UNITED STATES MAGISTRATE JUDGE