UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRY WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>C. OGBUEHI, et al.,<br><br>    Defendants. | Case No. 1:19-cv-00855-JLT-EPG<br><br>FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REVISED MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 74, 76, 89)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Gerry Williams ("Plaintiff") is proceeding in this civil rights action filed pursuant to 42 U.S.C. § 1983. Williams alleges that two medical providers at Kern Valley State Prison, Defendants Physician Assistant Ogbuehi and Dr. Ulit, were aware of Plaintiff's serious medical need related to an active Hepatitis-C infection, yet were deliberately indifferent by failing to provide him medication due to its expense.

Before the Court is the motion for summary judgment filed by Defendants C. Ogbuehi and W. Ulit ("Defendants"). (ECF No. 74.) Plaintiff has opposed Defendants' motion and also filed his own Motion for Summary Judgment (ECF No. 76), followed by filing a revised Motion for Summary Judgement (ECF No. 89).

For the reasons described below, the undersigned recommends that Defendants' motion for summary judgment be GRANTED and that Plaintiff's motion for summary judgment be DENIED.

## I.     BACKGROUND

Plaintiff filed an initial complaint in this action on June 19, 2019. (ECF No. 1). Following screening, Plaintiff filed a First Amended Complaint (FAC) on November 8, 2019. (ECF No. 12). Plaintiff alleges as follows:

In or about 2010, while housed at Pleasant Valley State Prison ("PVSP"), Plaintiff was diagnosed with Hepatitis C, which Plaintiff abbreviates as "Hep-C" and Defendants as "Hepatitis-C." Hep-C requires interferon treatment.

Plaintiff was transferred to Kern Valley Sate Prison ("KVSP") on April 12, 2012.

On April 4, 2013, Plaintiff requested a medical transfer from KVSP based on the fact that Plaintiff suffers from Hep-C and should be receiving treatment. Plaintiff was evaluated on February 11, 2013 by Doctor A. Manasrah, who documented that Plaintiff was Hep-C positive.

On October 17, Plaintiff submitted a "Health Care Service Request Form" stating that he was experiencing excruciating pain in the upper right side, which he believed may be related to Hep-C causing liver or kidney damage.

Plaintiff was evaluated by RN J. German on December 2, 2013, who recorded that Plaintiff had a history of Hep-C.

For more than three years, Plaintiff complained to Defendant Wayne Ulit that he was having excruciating pain in his upper right side and that he believed his Hep-C was getting worse. Yet, Defendant Wayne Ulit stated that he would not give Plaintiff the treatment because the medication is very expensive and Plaintiff had to be under 55 years old to receive the treatment.

On or about November 29, 2016, Plaintiff was evaluated by Defendant Clement Ogbuehi. Dr. Ogbuehi reviewed Plaintiff's medical history and discovered that Plaintiff was Hep-C positive. Plaintiff explained that he has been experiencing excruciating pain in the upper right side for four or five years and has not received any treatment. Plaintiff explained that there was a new drug that could cure Hep-C. Defendant Ogbuehi denied Plaintiff this new medication and failed to provide Plaintiff any other type of treatment, due to the expensive cost of the drug.

By the time Defendants Ulit and Ogbuehi decided to treat Plaintiff for Hep-C, Plaintiff had contracted cirrhosis of the liver.

Plaintiff has had Hep-C for more than 18 years and has not received any type of treatment. Defendants stated that Plaintiff's Hep-C was undetectable.

Plaintiff requested this new drug, Harvoni, which is a cure for Hep-C, prior to contracting cirrhosis of the liver. Defendants Ulit and Ogbuehi refused to provide Plaintiff with medications due to the cost. Now Plaintiff's Hep-C has developed into cirrhosis of the liver.

Plaintiff informed Defendants Ogbuehi and Ulit on several different occasions that he was experiencing excruciating abdominal pain and dark loud smelling urine, and requested the new oral treatment: Harvoni, Sovald, and Viekra Pak which works better than interferon and only takes 12 to 24 weeks to cure the hep-C virus and has a 90% to 100% success rate. Plaintiff's request for treatment was denied.

After his Court dismissed Plaintiff's case for failure to state a claim (ECF Nos. 16, 18), Plaintiff filed an appeal to the Ninth Circuit. On November 12, 2021, the Ninth Circuit reversed and remanded, stating that "[t]he district court dismissed Williams's action after finding that Williams's allegations in his first amended complaint were insufficient to state a plausible claim for deliberate indifference. However, Williams alleged that his Hepatitis C, which led to cirrhosis of the liver, went untreated despite his reports of excruciating pain to defendants Ogbuehi and Ulit. Williams further alleged that he received no treatment for his pain associated with Hepatitis C and cirrhosis." (ECF No. 24 at 2). The Ninth Circuit held, "[l]iberally construed, these allegations were sufficient to warrant ordering [defendants] to file an answer." (*Id.*) (second alteration in original) (citation and internal quotation marks omitted). The case was thus reopened and proceeded on Williams' claim for deliberate indifference to serious medical needs against Defendants Ogbuehi and Ulit.

On July 14, 2023, Defendants filed a motion for summary judgment. (ECF No. 74). Plaintiff filed a motion for summary judgment on July 17, 2023. (ECF No. 76). Plaintiff then attempted to supplement his motion (ECF No. 77) and the Court ordered Plaintiff to file a revised motion for summary judgment instead, "that is complete in itself and without reference to his earlier motion and attachments." (ECF No. 79). Plaintiff filed a revised motion for summary judgment on November 6, 2023 (ECF No. 89), to which Defendants filed a response (ECF No. 90). Accordingly, the Court will address only Plaintiff's revised motion (ECF No. 89).

Both Defendants' and Plaintiff's motions for summary judgment (ECF Nos. 74, 89) are now fully briefed and ripe for decision.

## II.    SUMMARY OF MOTIONS FOR SUMMARY JUDGMENT

Defendants' motion for summary judgment (ECF No. 74) argues that the undisputed evidence demonstrated that Plaintiff did not have Hepatitis-C while he was under the medical care of Defendants and, therefore, did not require treatment for Hepatitis-C at the time he interacted with Defendants. (ECF No. 74-1 at 11–15).[1] Plaintiff's Hepatitis-C had cleared on its own before Defendants began treating Plaintiff. (*Id.* at 12). Furthermore, Defendants regularly saw and treated Plaintiff, ordered various tests and procedures, and monitored his liver conditions. (*Id.* at 12–15). Defendants also argue that they are entitled to qualified immunity because there was no established right to treatment for Hepatitis-C after it had cleared on its own (*id.* at 15–17) and that Plaintiff is not entitled to punitive damages (*id.* at 17–18).

Specifically, although notes in March 29, 2010 indicate that Plaintiff was positive for Hepatitis-C, test results from May 2010 through September 2018 showed that the viral load for Hepatitis was "not detected." With no detectable Hepatitis C, Plaintiff had either been successfully treated for the infection of had successfully cleared the infection on his own.

Plaintiff opposed Defendants' motion (ECF Nos. 91, 92) and also filed his own motion for summary judgment. (ECF No. 89). In his motion, Plaintiff argued that he was diagnosed with Hepatitis C in 2010, while he was at PVSP. (ECF No. 89 at 3). After he was transferred to KVSP in 2012, he sought treatment for Hepatitis-C, but his requests were denied. (*Id.*) For three years, Plaintiff told Defendant Ulit that he was in excruciating pain and believed his condition was getting worse. Ulit denied treatment for Hepatitis-C. (*Id.*) Plaintiff alleges that Defendant Ulit told Plaintiff he would not give Plaintiff the treatment because the medication for Hepatitis-C was expensive. (*Id.*) Plaintiff was evaluated by Defendant Ogbuehi in November 2016 and complained to him of severe pain. (*Id.* at 4). Plaintiff claims that Defendant Ogbuehi denied Plaintiff treatment because it was too costly. (*Id.*) By June 2017, Plaintiff had developed cirrhosis of the liver, but Defendants still failed to treat Plaintiff. (*Id.*) In August 2017, a physician reviewed Plaintiff's health record and "found that no focal masses were present and

---

[1] Page numbers refer to the blue CM/ECF numbers in the top right corner of the document.

4

that his viral load was undetectable." (*Id.*) Accordingly, his first level appeal was denied because "there was no clinical indication to warrant the use of Harvoni." (*Id.*) Plaintiff alleges that the inaction of defendants allowed Plaintiff's Hepatitis-C infection to worsen for years. (*Id.*)

### III. LEGAL STANDARDS

#### A. Summary Judgment Legal Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca* ("*Albino II*"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded fact-finder could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact-finder] could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n.2 (quoting *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 258 (3d Cir. 1983)).

### B. Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires a plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled *on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness—failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known"—is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836–37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical provider—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to

establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi*, 391 F.3d at 1058 (alterations in original) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

## IV. ANALYSIS OF EVIDENCE REGARDING WHETHER PLAINTIFF HAD AN ACTIVE HEPATITIS C INFECTION AT RELEVANT PERIOD

### A. Defendants' Evidence

With those standards in mind, the Court turns to the evidence submitted by Defendants to support their central contention that the undisputed evidence shows that Plaintiff did not have Hepatitis-C and therefore did not require treatment for Hepatitis-C at the time he interacted with Defendants. Rather, Plaintiff's Hepatis-C had cleared on its own before Defendants began treating Plaintiff. (ECF No. 74-1 at 5). This evidence includes Plaintiff's medical records and declaration of B. Feinberg, M.D., a licensed physician and Chief Medical Consultant for the California Correctional Health Care Services (CCHCS) Office of Legal Affairs, who reviewed Plaintiff's medical records. (ECF Nos. 74-5 and 74-6).

Plaintiff was housed at KVSP from June 14, 2012 through November 24, 2019. (ECF No. 91 at 1). During this time period, Plaintiff was tested on multiple occasions for HCV-RNA, known as a viral load test. One report, dated May 27, 2010, describes this test as "an FDA-approved nucleic acid amplification test for the quantitation of Hepatitis C (HCV) Viral RNA in human plasma or serum. This method utilizes real time-PCR technology for detection of HCV RNA viral load." (ECF No. 74-6 at 5). May 27, 2010 test results indicate "HCV RNA not Detected." (*Id.*) Test results from May 8, 2012 also report that HCV RNA was "not detected." (*Id.* at 14). Test results dated May 2, 2013 report that HCV RNA is "not detected." (*Id.* at 21). A test report from July 2, 2014 also reported that HCV RNA was "Not Detected." (*Id.* at 25).

1  Another report from August 24, 2015 shows that HCV RNA was "Not Detected." (*Id.* at 29).
2  A medical record dated May 22, 2017 again reports that HCV RNA was "Not Detected." (*Id.* at
3  65). Test results from September 26, 2018 show HCV RNA "Not detected." (*Id.* at 94).

4       Other records also state that Hepatitis-C viral load is not detectable. A progress note from
5  August 30, 2011 states "h/o [history of] HCV-VL not detectable." (*Id.* at 6). A CDCR Health
6  Screening Report from June 14, 2012, notes for current medical conditions "HCV, VL0" (*id.* at
7  18), which Dr. Feinberg summarizes as noting "that he had a history of HCV with no detectable
8  viral load." (ECF No. 74-5 at 5). A note from March 6, 2012 states "HCV+, knows 20 yrs, w/o
9  Tx stats, HCV VL Low," (ECF No. 74–6 at 12), which Dr. Feinberg summarizes as "Regarding
10 Hepatitis-C, Dr. Wu documented Williams stating that he had known he had been positive for
11 Hepatitis-C for 20 years, had not received treatment for it, and that his viral load was 'low.'"
12 (ECF No. 74–5 at 5). A primary care provider progress note from July 2, 2014 states that HCV is
13 "At Goal" and references a test from April 30, 2013 that "hc rna neg." (ECF No. 74–6 at 26).
14 An assessment note from August 16, 2017 reports that "HCV (hepatitis C virus) cleared by itself
15 HCV RNA negative." (*Id.* at 75). Plaintiff's 602 Appeal assessment dated August 28, 2017
16 references August 16, 2017 primary care provider's note "patient's viral load are undetectable,"
17 "labs 5/22/17 . . . hep C viral load undetectable," and concludes "Patient's viral load is
18 undetectable thus there is no point in treatment with Harvoni." (*Id.* at 76). A progress note dated
19 October 12, 2017 states "HCV infection Resolved. Reassured Numerous times." (*Id.* at 79).
20 An Office Visit Note dated January 19, 2018 states "No active HCV . . . HCV Infection He
21 doesn't have this. Viral load is negative and has been for years." (*Id.* at 83). A progress note
22 dated June 13, 2018 states "HCV cleared." (*Id.* at 87).

23      Additionally, Defendants have submitted the declaration of B. Feinberg, M.D., a licensed
24 physician and Chief Medical Consultant for the California Correctional Health Care Services
25 (CCHCS) Office of Legal Affairs. (ECF No. 74-5). Dr. Feinberg reviewed Plaintiff's medical
26 records and states from "I reviewed Williams's medical records from 2010, the earliest I was
27 able to access electronically, through June 2023. During that entire time period, which includes
28 the time period in question of approximately 2016 through 2018, I can find no evidence that

Williams ever had an active Hepatitis-C infection. Rather . . . there is repeated evidence showing a prior Hepatitis-C infection that had already resolved by 2010." (*Id.* at 4). Dr. Feinberg explains that when the result of an HCV RNA test indicates that it was "not detected" it means that "Williams had either been successfully treated for the infection or had successfully cleared the infection on his own," and that given that Plaintiff claims he never received treatment, "he is likely one of the approximately 15–50% of individuals infected with HCV . . . who are able to spontaneously clear the virus on their own without treatment." (*Id.*)

Dr. Feinberg then summarizes several medical records indicating that HCV viral load was not detected in his tests performed at KVSP. Feinberg then concludes:

> Based upon my review of the medical records, my training and experience, it is my professional opinion that Williams's claim that PA Ogbuehi and Dr. Ulit refused to provide Williams with medications to cure Hepatitis-C due to cost is not supported by the medical record. . . . [T]he goal of such treatment is to cure someone of Hepatitis-C, as evidenced by an undetectable viral load. If the viral load is undetectable, the individual is considered cured and thus no treatment is indicated. . . . Williams appears to be one of the approximately 15–50% of those infected with HCV who are able to spontaneously clear the virus on their own, without treatment.
>
> Based upon my review of the medical records, my training and experience, it is my professional opinion that Williams's claim that he developed cirrhosis of the liver as a result of PA Ogbuehi and Dr. Ulit refusing to provide him with medications to cure Hepatitis-C is not supported by the medical record. To the extent that Williams has developed liver damage, it is unclear to what extent it is due to his prior infection with Hepatitis-C. However, it is clear, to a high degree of medical certainty, that it is not due to PA Ogbuehi and Dr. Ulit failing to provide him with medications to cure a Hepatitis-C infection that was already long since cured by the time either of them saw Williams.

(*Id.* at 12–13).

Based on this evidence, the Court finds that Defendants have met their burden of presenting sufficient evidence that demonstrate an absence of a genuine issue of material fact as to whether Plaintiff had a serious medical condition requiring treatment, specifically an active Hepatitis C infection.

\\\
\\\

**B. Plaintiff's Evidence**

The Court next turns to Plaintiff's evidence presented in his motion for summary judgment and opposition to Defendants' motion for summary judgment to determine if that evidence raises a genuine dispute of fact as to whether he had an active Hepatitis-C infection at the relevant period that required treatment.

Plaintiff submits evidence that he repeatedly complained that he required treatment for Hepatitis C. For example, on June 10, 2013, Plaintiff wrote a letter to Warden Martin Biter requesting a medical transfer from KVSP, claiming in part that he was suffering from Hepatitis C. (ECF No. 89 at 30). He also submitted several other complaints to medical providers claiming that he was experiencing pain that he believed could be related to Hepatitis C and resulting liver damage. Such evidence supports that Plaintiff himself believed he had Hepatitis C.

However, Plaintiff does not refute Defendants' evidence that tests indicated Plaintiff was incorrect in that belief. As to the multiple tests described above reporting that the Hepatitis C viral load was undetected, Plaintiff incorrectly states that "Plaintiff was only tested on two occasions. One on June 14, 2017, and another one on July 5, 2018." (ECF No. 91 at 2). This is incorrect, as the evidence shows several tests over time as described above. In any event, Plaintiff does not dispute the results of those tests. Plaintiff does state "Improper test procedure" in response to Defendants' statement of fact regarding these tests. (*Id.*) However, Plaintiff does not cite to any evidence or opinion, or otherwise explain how these tests were improper.

Indeed, the only medical evidence that he submits to support his contention that he had Hepatitis C, albeit from 2013 before he consulted with either Defendant, is a medical note from February 11, 2013. Plaintiff argues that this note documented that Plaintiff was Hepatitis C-Positive at that time. (ECF No. 89 at 15; ECF No. 97 at 1). However, the note actually states regarding HCV "no hepatotoxins alt 29, ast 15, positive immunity to hep A/B." (*Id.* at 28). All this note indicates is that his liver function tests (ALT and AST) were normal and that he also had antibodies to Hepatitis A and B, not a positive or active Hepatitis-C condition requiring treatment.

Plaintiff also points to medical records indicating that he developed cirrhosis of the liver, which he believes came from an untreated Hepatitis C infection. (ECF No. 91 at 2) ("The hepatitis-C virus was still in Plaintiff's body because it developed into End-Stage Cirrhisis [sic] of the liver and should have been treated."). However, Plaintiff does not support this belief with any medical documents or opinion. He does not counter Feinberg's explanation that the cirrhosis could have developed from his earlier Hepatitis C infection, even if it had cleared by that time, or from another reason. The fact that Plaintiff developed cirrhosis of the liver does not establish that Plaintiff had an active Hepatitis C infection that went untreated under Defendants' care.

Plaintiff also asserts that Dr. Ulit "did not treat the cirrhosis." (ECF No. 91 at 5). However, this too is unsupported, and in any event is outside the scope of the complaint in this case. Plaintiff's complaint alleged a failure to treat Hepatitis C due to the expense of the medication, and that is the only claim permitted by the Ninth Circuit. (ECF No. 24 at 2). ("However, Williams alleged that his Hepatitis C, which led to cirrhosis of the liver, went untreated despite his reports of excruciating pain to defendants Ogbuehi and Ulit. Williams further alleged that he received no treatment for his pain associated with Hepatitis C and cirrhosis."). There is no pending claim related to deliberate indifference to cirrhosis of the liver.

### C. Conclusion

Thus, after reviewing the evidence submitted by both parties in connection with the motions for summary judgment, the Court finds that a material fact—here that Plaintiff had a serious medical need due to an active Hepatitis-C infection while under Defendants' care --lacks any proof, and a fair-minded fact-finder could not reasonably find for Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact-finder] could reasonably find for the plaintiff."). Defendants, and not Plaintiff, are thus entitled to summary judgment.

### V.   RECOMMENDATION

Based on the foregoing, I**T IS RECOMMENDED** that:

1. Defendants' motion for summary judgment (ECF No. 74) be **GRANTED**;
2. Plaintiff's motion for summary judgment and revised motion for summary

judgment (ECF Nos. 76 and 89) be **DENIED**; and

3. Judgment be entered for Defendants and the case closed.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**March 15, 2024**__                    /s/ *Erica P. Grosjean*
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE